UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X


MEDICINE SHOPPE INTERNATIONAL, INC.,

               Plaintiff,          REPORT AND
                                RECOMMENDATION
     -against-

                                CV 2004-5207 (ERK)(MDG)
APOSTOLOS MITSOPOULOS and EFROSINI
MITSOPOULOS,

               Defendants.

- - - - - - - - - - - - - - - - - - X

GO, United States Magistrate Judge:

    Plaintiff Medicine Shoppe International, Inc. ("MSI") brings
this diversity action to enforce a guaranty executed by
defendants Apostolos Mitsopoulos and Efrosini Mitsopoulos
("defendants" or "Mitsopouloses").  In March 2005, MSI moved
to dismiss some counterclaims and for a more definite statement
of other counterclaims (ct. docs. 21, 22) while defendants moved
for judgment on the pleadings on one of its counterclaims (ct.
docs. 18, 19).  Plaintiff then moved to stay this action pending
an arbitration proceeding (ct. docs. 25, 26), which defendants
countered by moving to stay the arbitration proceeding and to
compel discovery.  Ct. docs. 32, 33, 34 (motion to compel), 35,
36, 37 (identical documents filed as motion to stay).

    The Honorable Edward R. Korman, Chief United States District
Judge, has referred all of the pending motions to me (docket
entry for ct. doc. 44).  Although the motions for a stay and to
compel are within my pretrial authority to hear and determine, I

will address the motions for a stay in this Report and Recommendation in the interests of clarity and brevity. The motion to compel will be addressed in a separate order filed herewith.

FACTUAL BACKGROUND

MSI is a national franchisor of retail pharmacies that has developed a marketing system, method of operation, and a system of training, services and assistance to its licensees ("MSI System"). Complaint ("Comp.") at ¶ 9. Through individual license agreements, MSI permits licensees to use the MSI System and MSI's trademarks. Id.

On or about December 12, 1996, MSI and Titan Pharmaceuticals and Nutrition, Inc. ("Titan") entered into a license agreement for the operation of a franchised MSI pharmacy in Brooklyn, New York (the "License Agreement"). Id. at ¶¶ 11-12, Exh. A; Answer and Counterclaims ("Answer") at ¶ 11. George Mitsopoulos, the president and principal shareholder of Titan, personally guaranteed Titan's performance of its obligations under the License Agreement. Comp., Exh. A; Answer at ¶ 10. Among Titan's obligations under the License Agreement is the payment of certain fees to MSI. Comp. at ¶ 11, Exh. A at ¶ 6.

On or about October 23, 1997, MSI and Titan entered into a Master Loan and Security Agreement ("Security Agreement") pursuant to which MSI loaned Titan $100,000. Id. at ¶ 15, Exh. B; Answer at ¶ 17(d). The $100,000 loan was evidenced by a note

executed by George Mitsopoulos in his individual capacity (the "Note").  Comp. at ¶ 16, Exh. C; Answer at ¶ 17(c).

On or about October 31, 1997, George Mitsopoulos's parents, the defendants, executed a guaranty of certain of Titan's obligations to MSI (the "Guaranty").  Comp. at ¶ 17, Exh. D; Answer at ¶ 17(e).  At the same time, the defendants executed a mortgage on their residence in Brooklyn (the "Mortgage") in favor of MSI.  Answer at ¶ 17(f); Decl. of Richard Pu dated March 28, 2005 ("3/28/05 Pu Decl.") (ct. doc. 29), Exh. C.

On December 1, 2004, MSI filed the instant action to enforce the Guaranty, claiming that Titan and George Mitsopoulos failed to make payments under the License Agreement and the Note.  Ct. doc. 1.  In their answer filed on December 27, 2004, defendants claimed that the Mortgage was satisfied because the Note had been repaid and asserted eleven counterclaims.  Ct. doc. 5.

On March 11, 2005, pursuant to an arbitration clause in the License Agreement, MSI commenced an arbitration proceeding against Titan and George Mitsopoulos for breaches of the License Agreement, the Security Agreement and the Note.  See 3/28/05 Pu Decl., Exh. I.  The Mitsopouloses are not parties to the arbitration.  The arbitration hearing is scheduled to begin on May 15, 2006, after counsel for defendants unsuccessfully sought a stay from the American Arbitration Association ("AAA").  See

Letter to Court from Cliona Levy dated December 23, 2005 ("Levy Ltr.") (ct. doc. 68) at 2.[1]

DISCUSSION

I.   <u>MSI's Motion to Stay this Action</u>

MSI argues that staying this action in favor of the pending arbitration proceeding is appropriate because the arbitration will resolve the majority of the issues raised by defendants in their defenses and counterclaims.

District courts have the inherent power to grant a stay in a case in which some, but not all, of the parties are in arbitration.[2]  <u>See</u> <u>WorldCrisa Corp. v. Armstrong</u>, 129 F.3d 71, 75-76 (2d Cir. 1997); <u>Sierra Rutile Ltd. v. Katz</u>, 937 F.2d 743, 750 (2d Cir. 1991).  A stay may issue when 1) there are issues common to the arbitration and the federal case; 2) those issues will be finally determined by the arbitration; 3) the moving

---

[1] As further noted in Ms. Levy's letter, on December 14, 2005, George Mitsopoulos and Titan commenced an action in the New York State Supreme Court which MSI later removed to the District Court for the Southern District of New York after a state court judge denied an <u>ex</u> <u>parte</u> application for a temporary restraining order. Levy Ltr. at 3, Exh. B.  On December 16, 2005, George Mitsopoulos and Titan commenced an action in the Southern District of New York against MSI, its parent corporation, Cardinal Health, Inc., and the AAA.  <u>See</u> <u>id.</u> at 2, Exh. A.  According to plaintiff, both actions raise the same claims as alleged by the Mitsopouloses in this action and by George Mitsopoulos in the arbitration.  <u>Id.</u> at 2.  On December 20, 2005, United States District Judge Shira Scheindlin dismissed the action removed from New York state court and dismissed the AAA from the action commenced in the Southern District.  <u>Id.</u> at 3.

[2] The Federal Arbitration Act's stay provision does not apply here because the defendants are not parties to an arbitration agreement.  <u>See</u> <u>WorldCrisa</u>, 129 F.3d at 75; <u>Sierra</u>, 937 F.2d at 748.

party will not hinder the arbitration; 4) the arbitration will be resolved within a reasonable time; and 5) the delay will not cause undue hardship to the non-moving party.  See The Orange Chicken, LLC v. Nambe Mills, Inc., No. 00 Civ. 4730, 2000 WL 1858556, at *9 (S.D.N.Y. Dec. 19, 2000); see also Sierra, 937 F.2d at 750; Nederlandse Erts Tankersmaatschappij, N.V., 339 F.2d 440, 441-42 (2d Cir. 1964).  "[T]he movant bears a heavy burden of showing necessity for the stay."  Sierra, 937 F.2d at 750.

MSI argues that there is a "nearly-complete overlap" between the issues to be decided in the arbitration proceeding and defendants' defenses and counterclaims.  Although MSI is correct that there is some overlap between the arbitration proceeding and defendants' defenses and counterclaims relating to the enforcement of the License Agreement, Security Agreement and Note, many of defendants' claims relate solely to the Guaranty and Mortgage which are not part of the arbitration proceeding. For example, defendants seek in their ninth counterclaim a declaration discharging the Mortgage, an issue that will not directly be resolved in the arbitration.  See Sierra, 937 F.2d at 750 (denying stay where some claims in action were not cognizable in arbitration).

More importantly, because the defendants in this action are different from the defendants in the arbitration, the arbitration will not necessarily have a preclusive effect on claims in this action even as to issues common to both proceedings.  See id. (difference between parties in court action and in arbitration

-5-

undermines rationale for staying action). In a diversity case, the law of the forum state governs the issue of the collateral estoppel effect of an arbitration decision. See <u>BBS Norwalk One, Inc. v. Raccolta, Inc.</u>, 117 F.3d 674, 677 (2d Cir. 1997). Under New York law, "a party is estopped from relitigating an issue when that issue was necessary to the resolution of the prior action, and the party against whom estoppel is invoked [or its privy] had a full and fair opportunity to contest that issue in the previous litigation." <u>Pennecom B.V. v. Merrill Lynch & Co., Inc.</u>, 372 F.3d 488, 491 (2d Cir. 2004). Privity is "an amorphous concept . . . and includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and those who are co-parties to a prior action." <u>Buechel v. Bain</u>, 97 N.Y.2d 295, 304 (2001). In New York, "a guarantor is bound by a prior adjudication involving the principal debtor [only] if the guarantor had notice of and an opportunity to participate in the prior proceeding." <u>Walter E. Heller & Co. v. Cox</u>, 343 F. Supp. 519, 524 (S.D.N.Y. 1972) (guarantor who was principal stockholder bound by <u>res</u> <u>judicata</u> where he had been active participant and in control of corporate debtor's defense in bankruptcy proceeding), <u>aff'd</u>, 486 F.2d 1398 (2d Cir. 1973); see <u>Eagle Transport Ltd., Inc. v. O'Connor</u>, 470 F. Supp. 731, 734 (S.D.N.Y. 1979); <u>Metro Corrugated Containers, Inc. v. Owens-Ill. Glass Co.</u>, 185 F. Supp. 359, 362 (E.D.N.Y. 1960); <u>Sears, Roebuck & Co. v. 9 Avenue-31 St. Corp.</u>, 274 N.Y. 388, 408-09 (1937);

<u>Charles A. Gaetano Constr. Corp. v. Citizens Developers of</u>
<u>Oneonta Inc.</u>, 636 N.Y.S.2d 208 (3d Dep't 1996); 63 N.Y. Jur. 2d
<u>Guaranty and Suretyship</u> §§ 387, 388, 389 (2005); <u>Restatement</u>
<u>(Third) of Suretyship & Guaranty</u> § 67(2) (2005).  Even though
defendants have guaranteed Titan's obligations, defendants do not
have an opportunity to participate in the arbitration proceeding.
<u>See</u> <u>Russom v. Waldron</u>, 638 N.Y.S.2d 521, 522 (3d Dep't 1996)
(holding that the defendant insureds were not precluded from
contesting the issues of proximate cause since the insureds were
not parties to and did not participate in the arbitration between
plaintiff and the insurer).  Nor is the familial relationship
between the Mitsopouloses and George Mitsopoulos sufficient to
bind defendants.  <u>See</u> <u>Lucchese v. Rotella</u>, 468 N.Y.S.2d 948, 950-
51 (3d Dep't), <u>aff'd</u>, 60 N.Y.2d 815 (1983).

Plaintiffs further argue that George Mitsopoulos and Titan
are defendants' virtual representatives in the arbitration
because Titan and George Mitsopoulos are challenging their
agreements with MSI through this litigation and are paying
defendants' legal fees.  However, in determining whether the non-
party's interests were adequately represented in a prior
proceeding, courts look to "the exercise of control by the non-
party over the conduct of the litigation of the prior
proceeding," not the other way around.  <u>See</u> <u>Fried v. Brevel</u>
<u>Motors, Inc.</u>, 666 F. Supp. 28, 30 (E.D.N.Y. 1987).  Thus, while
Titan and George Mitsopoulos may be adequately represented in
this action, the converse is not necessarily true.

Therefore, even if MSI prevails in the arbitration, issues in this case will remain to be determined and, in any event, defendants would not be bound by the arbitration decision as to any common issues. Accordingly, because MSI has not carried its burden of demonstrating necessity for the stay, its motion to stay this action must be denied.

In light of this conclusion, this Court need not address defendants' unsupported contention that MSI is estopped from seeking a stay because MSI did not do so until three months before commencing this action. In any event, this argument is meritless. A party is deemed to have waived its right to arbitration where he "engages in protracted litigation that results in prejudice to the opposing party." See In re S&R Co. of Kingston v. Latona Trucking, Inc., 159 F.3d 80, 83 (2d Cir. 1998). In considering waiver, a court must examine several factors including: 1) the time elapsed from the commencement of litigation to the request for arbitration; 2) the amount of litigation; and 3) proof of prejudice. PPG Indus., Inc. v. Webster Auto Parts Inc., 128 F.3d 103, 107-08 (2d Cir. 1997).

The only prejudice claimed by defendants is that they incurred "substantial attorney fees" for over two months before MSI sought arbitration and moved for a stay one month later. However, "[n]either the passage of time, standing alone, nor the incurring of legal expenses inherent in litigation, without more, are sufficient to support a finding of waiver." Provident Bank v. Kabas, 141 F. Supp.2d 310, 316 (E.D.N.Y. 2001); see also PPG

Indus., 128 F.3d at 107 (five month delay did not require a finding of waiver); Becker v. DPC Acquisition Corp., No. 00 CIV. 1035, 2002 WL 1144066, at *12 (S.D.N.Y. May 30, 2002) (no waiver where there was fourteen month delay); In re HBLS, L.P., No. 01 CIV. 2025, 2001 WL 1490696, at *7-*8 (S.D.N.Y. Nov. 21, 2001) (seventeen month delay did not constitute waiver). During the three months before plaintiff sought a stay, the parties did not engage in extensive litigation. See PPG Indus., 128 F.3d at 107 (waiver found only if party engages in "protracted litigation" that prejudices party); Rush v. Oppenheimer & Co., 779 F.2d 885, 888 (2d Cir. 1985) (litigating motion to dismiss "did not waive the right to arbitrate"). Thus, MSI is not estopped from seeking a stay in favor of arbitration.

II.  Defendants' Motion to Stay Arbitration

Defendants seek a stay of the pending arbitration "pursuant to the Court's inherent powers." Defs.' Br. in Supp. of Mot. to Compel Produc. and to Stay Arbitration (ct. doc. 34) at 12. However, the proper method for seeking a stay of a pending arbitration is by motion for a preliminary injunction pursuant to Fed. R. Civ. P. 65(a). See, e.g., Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 129 (2d Cir. 2003); Mount Ararat Cemetery v. Cemetery Workers and Greens Attendants Union, 975 F. Supp. 445, 447 (E.D.N.Y. 1997). "A party seeking a preliminary injunction must establish that 1) absent injunctive relief, it will suffer irreparable harm, and 2) either a) that it is likely to succeed on the merits, or b) that there are sufficiently

serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 43 (2d Cir. 1999); Otokoyama Co. v. Wine of Japan Import, Inc., 175 F.3d 266, 270 (2d Cir. 1999). Defendants have not attempted to make the requisite showing. Therefore, I recommend denying defendants' motion for a stay of arbitration.

III. MSI's Motion to Dismiss

MSI moves to dismiss defendants' counterclaims two, six, eight and part of ten for failure to state a claim. Dismissal under Rule 12(b)(6) may be granted only if "the plaintiff can prove no set of facts that would entitle her to relief on her claims." Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005); see also Scutti Enters., LLC v. Park Place Ent'mt Corp., 322 F.3d 211, 214 (2d Cir. 2003). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In ruling on a motion to dismiss, the Court accepts as true a plaintiff's factual allegations and draws all reasonable inferences in favor of the non-moving party. See Board of Educ. of Pawling Cent. Sch. Dist. v. Schutz, 290 F.3d 476, 479 (2d Cir. 2002).

Defendants first argue that MSI's motion must be denied because MSI answered the general allegations of defendants' counterclaims and thereby waived any motion to dismiss.

Although Fed. R. Civ. P. 12(b) provides that a motion to dismiss for failure to state a claim "shall be made before pleading if a further pleading is permitted," simultaneous filing is permissible under Rule 12(b). See Beary v. West Publ'g Co., 763 F.2d 66, 68 (2d Cir. 1985); Invamed, Inc. v. Barr Labs., Inc., 22 F. Supp.2d 210, 215 (S.D.N.Y. 1998); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1361 (3d ed. 2004). Moreover, "it is permissible to raise one or more of the enumerated defenses by motion and then assert other types of defenses, such as denials and affirmative defenses, by way of responsive pleading." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1347 (3d ed. 2004). Here, on February 8, 2004, MSI filed both its response to some of defendants' counterclaims and moved to dismiss or for a more definite statement as to other counterclaims. Because defendants pled general allegations which they later incorporated by reference into their counterclaims, MSI, in effect, responded to the general allegations. Nothing in Rule 12 supports the contention that MSI waived its right to move under that Rule by responding to defendants' general allegations that were incorporated by reference in the counterclaims. Indeed, finding waiver under these circumstances would violate Rule 8(f)'s requirement that pleadings be "construed to do substantial justice." Fed. R. Civ. P. 8(f).

<u>Fair Debt Collection Practices Act ("FDCPA") Claim</u>

Defendants allege in their second counterclaim that "MSI engaged in an unfair debt collection practice within the meaning of the [FDCPA]." Answer at ¶ 52. In moving to dismiss, MSI argues that it is not a "debt collector" within the meaning of 15 U.S.C. § 1692(a)(6) and that defendants did not allege otherwise. Pl.'s Mem. of Law in Supp. of its Partial Mot. to Dismiss (ct. doc. 22) at 3-4. In their opposition, defendants implicitly concede that MSI is not a "debt collector," arguing, instead, that MSI's former attorneys in this action, Baker & Hostetler, is a "debt collector" that engaged in unfair practices by filing this lawsuit. Defs.' Initial Br. (ct. doc. 19) at 8-9.

Defendants further argue that MSI is liable for the actions of its attorneys under agency principles. <u>Id.</u> at 9-10. Setting aside whether "a party may assert additional facts in his or her response to a motion to dismiss," <u>Torrico v. IBM Corp.</u>, 213 F. Supp.2d 390, 399 n.4 (S.D.N.Y. 2002), the Court will consider defendants' new theory that MSI is vicariously liable under the FDCPA for Baker & Hostetler's conduct. <u>Cf.</u> <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 48 (2d Cir. 1991) (the "usual practice" upon granting a defendant's motion to dismiss is to provide the plaintiff with an opportunity to amend the complaint). However, even defendants' new theory of liability fails to state a claim. The FDCPA imposes liability only on "debt collectors." <u>See</u> <u>Heintz v. Jenkins</u>, 514 U.S. 291, 292-93 (1995); <u>Maguire v. CitiCorp. Retail Servs., Inc.</u>, 147 F.3d 232,

235 (2d Cir. 1998); 15 U.S.C. § 1692k(a). "[A] creditor that is not itself a debt collector is not vicariously liable for the actions of a debt collector it has engaged to collect its debts." Doherty v. Citibank (South Dakota) N.A., 375 F. Supp.2d 158, 162 (E.D.N.Y. 2005); Kolari v. New York-Presbyterian Hosp., 382 F. Supp.2d 562, 573 (S.D.N.Y. 2005); accord Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 108 (6th Cir. 1996); Caron v. Charles E. Maxwell, P.C., 48 F. Supp.2d 932, 936 (D. Ariz. 1999). Because defendants concede that MSI is not a "debt collector" and because MSI cannot be vicariously liable for the conduct of Baker & Hostetler, I recommend that this counterclaim be dismissed.

Fraudulent Inducement Claim

Plaintiff argues that defendants' counterclaim for fraudlent inducement must be dismissed for failure to allege that plaintiff's fraudulent statements made to George Mitsopoulos "were made for the purpose of inducing Defendants to rely upon them." Pl.'s Mem. of Law in Supp. of its Partial Mot. to Dismiss at 5. Under New York law, "a plaintiff may state a claim for fraudulent misrepresentation made to a third party if he alleges that he relied to his detriment on the defendant's misrepresentation and that the defendant intended the misrepresentation to be conveyed to him." Securities Investor Prot. Corp. v. BDO Seidman, LLP, 222 F.3d 63, 71 (2d Cir. 2000). "Fraud liability lies only if the claimant falls within the purview of those whom the defendant intended would act upon the representation." Hamilton v. Accu-tek, 935 F. Supp. 1307, 1324

(E.D.N.Y. 1996). Thus, a plaintiff must allege that any misrepresentation was "calculated and intended to influence the plaintiffs." Id. (quoting Kuelling v. Roderick Lean Mfg. Co., 183 N.Y. 78, 85 (1905)); see also Powers v. Ostreicher, 824 F. Supp. 372, 376 (S.D.N.Y. 1993) ("Reliance upon fraudlent representations by persons who are not the direct addressees thereof but who may be intended or expected to learn of and act upon such representations will found an action in fraud and deceit"); Berkowitz v. Baron, 428 F. Supp. 1190, 1196 (S.D.N.Y. 1977) (plaintiffs "must be within the class of persons that [defendant] should reasonably have expected to rely on the" misrepresentations).

Defendants specifically allege in their Answer that "MSI . . . made misrepresentations of fact, as well as statements that omitted material facts, for the purpose of inducing others to enter into licensing agreements with MSI, as well as ancillary agreements such as the contract of guaranty signed by A&E Mitsopoulos." Answer at ¶ 15; see also id. at ¶¶ 16-17. Because this allegation suffices to state a claim for fraudulent inducement, I recommend that plaintiff's motion to dismiss this claim be denied.

New York Franchise Sales Act (the "Franchise Act") Claim

Plaintiff argues that defendants lack standing to assert their eigth counterclaim for violation of the Franchise Act. The Franchise Act provides that "[a] person who offers or sells a franchise in violation of [the Franchise Act] is liable to the

person purchasing the franchise for damages." N.Y. Gen. Bus. Law § 691(1). Defendants indisputably did not purchase a franchise from plaintiffs and did not submit any opposition to this aspect of plaintiff's motion to dismiss. Accordingly, I recommend that this claim be dismissed.

<u>Recission and Reformation Claim</u>

Defendants' tenth counterclaim is for recission or reformation of the License Agreement, the Security Agreement, the Mortgage and the Guaranty. Answer at ¶ 76. Plaintiff moves to dismiss this counterclaim as to the License Agreement and the Security Agreement. Since the defendants indisputably were not parties to the agreements, they lack standing to seek relief as to those agreements. I recommend that that portion of defendants' tenth counterclaim for recission and reformation be dismissed as to the License Agreement and the Security Agreement.

<u>Motion for a More Definite Statement</u>

Plaintiff moves pursuant to Rule 12(e) for a more definite statement of defendants' fifth and seventh counterclaims. Plaintiff argues that it is unable to admit or deny these counterclaims "because they fail to reasonably apprise MSI of which common law, statutory, or regulatory cause of action is being asserted by Defendants." Pl.'s Mem. of Law in Supp. of its Partial Mot. to Dismiss at 7-8.

A motion for a more definite statement may be granted if "a pleading to which a responsive pleading is permitted is so vague

or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e). Motions for a more definite statement are disfavored and should not be granted "unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." <u>Greater N.Y. Auto Dealers Ass'n v. Env't</u>, 211 F.R.D. 71, 76 (E.D.N.Y. 2002); <u>Kok v. First Unum Life Ins. Co.</u>, 154 F. Supp.2d 777, 781-82 (S.D.N.Y. 2001); <u>Vapac Music Publ'g, Inc. v. Tuff 'N' Rumble Mgmt.</u>, No. Civ. A. 99-10656, 2000 WL 1006257, at *6 (S.D.N.Y. July 19, 2000). Rule 12(e) is "designed to remedy unintelligible pleadings, not merely to correct for lack of detail." <u>Greater N.Y.</u>, 211 F.R.D. at 76; <u>Kelly v. L.L. Cool J.</u>, 145 F.R.D. 32, 35 (S.D.N.Y. 1992), <u>aff'd</u>, 23 F.3d 398 (2d Cir. 1994); <u>see</u> <u>Kok</u>, 154 F. Supp.2d at 782.

Under Fed. R. Civ. P. 8's "liberal pleading principles, . . . the failure in a complaint to cite a statute, or cite the correct one, in no way affects the merits of a claim [since] [f]actual allegations alone are what matters." <u>Northrop v. Hoffman of Simsbury,, Inc.</u>, 134 F.3d 41, 46 (2d Cir. 1997); <u>see</u> <u>Wynder v. McMahon</u>, 360 F.3d 73, 77 (2d Cir. 2004); <u>see</u> <u>also</u> <u>Flickinger v. Harold C. Brown & Co.</u>, 947 F.2d 595, 600 (2d Cir. 1991) ("federal pleading is by statement of claim, not by legal theory"). A plaintiff is merely required to "describe his claim briefly and simply." <u>Shah v. Inter-Continental Hotel Chicago Operating Co.</u>, 314 F.3d 278, 282 (7th Cir. 2002).

Defendants allege as their fifth counterclaim that "[b]y reason of MSI's failure to disclose the rate of interest payable under the License Agreement, MSI violated federal and state laws requiring truth and lending." Answer at ¶ 62. Defendants' also assert in their seventh counterclaim that "[b]y reason of its conduct, MSI engaged in an unfair and deceptive business practice." <u>Id.</u> at ¶ 68. Defendants' failure to refer to a particular statute is permissible since such a deficiency does not render the pleading unintelligible. <u>See</u> <u>Wynder</u>, 360 F.3d at 77; <u>Northrop</u>, 134 F.3d at 46. The counterclaims as pled suffice to give plaintiff "fair notice of what the . . . claim is and the grounds upon which it rests." <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512 (2002) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). In any event, in their opposition to plaintiff's motion for a more definite statement, defendants explain that the fifth counterclaim pertains to the Federal Truth in Lending Act, 15 U.S.C. § 1601 <u>et.</u> <u>seq.</u> and the seventh counterclaim pertains to New York's General Business Law § 649. Defs.' Initial Br. at 16-17. To the extent that plaintiff seeks more information as to the specific provisions that they allegedly violated, they may serve a contention interrogatory on defendants. <u>See</u> <u>Shah</u>, 314 F.3d at 282; <u>see</u> <u>also</u> <u>Pelman v. McDonald's Corp.</u>, 396 F.3d 508, 518 (2d Cir. 2005) (this "is the sort of information that is appropriately the subject of discovery, rather than what is required to satisfy the limited pleading requirement of Rule 8(a)").

Thus, I recommend that plaintiff's motion for a more definite statement be denied.

## Motion for Judgment on the Pleadings

Defendants move for judgment on the pleadings with respect to their ninth counterclaim. That counterclaim seeks a decree discharging the Mortgage on defendants' residence on the grounds that the Mortgage has been satisfied. Plaintiff argues in response that while Titan paid the outstanding balance on the Note, other arrearages secured by the Mortgage remained.

In deciding a motion under Fed. R. Civ. P. 12(c), the court must apply the same standard as for a motion to dismiss under Fed. R. Civ. P. 12(b)(6), accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. See Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004); Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003). "A complaint may be dismissed under Rule 12(c) only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Deravin, 335 F.3d at 200; Patel v. Searles, 305 F.3d 130, 135 (2d Cir. 2002). The court may consider the facts alleged in the pleadings and any documents attached or referenced in the pleadings. See Friends of Rockland Shelter Animals, Inc. v. Mullen, 313 F. Supp.2d 339, 342 (S.D.N.Y. 2004); Abiona v. Thompson, 237 F. Supp.2d 258, 265 (E.D.N.Y. 2002).

In support of its argument that the Mortgage was satisfied, defendants point to plaintiff's purported admission in ¶ 21 of

its reply that the Note was satisfied in 2000. However, plaintiff actually alleges that "MSI admits that in about September 2000, the balance on the note was reduced to zero, however A&E Mitsopolous, George Mitsopolous and Titan had not fulfilled other obligations to MSI under the Guaranty, License Agreement, and the Master Loan and Security Agreement, including payment of sums then due and owing." Reply at ¶ 21. Plaintiff also denied defendants' allegation that "because the mortgage on the A&E Mitsopolous residence was limited to the 10/23/97 Note, the mortgage became discharged upon the repayment of the 10/23/97 Note." Id. at ¶ 22.

Based on the record before the court, there is a triable issue whether, as defendants argue, the Mortgage was limited to securing the Note which has been satisfied. The Mortgage provides that it is made "to secure a Guaranty by Mortgagor for the Master Loan and Security Agreement . . . in the sum of" [$100,000] between Titan and MSI "to be paid in monthly installments commencing on or about January 31, 1999." Mortgage at 1 (annexed as Exh. C to 3/28/05 Pu Decl.).[3] Defendants contend that the reference to "monthly installments" refers solely to the Note. However, the Guaranty signed by defendants provided that they "absolutely and unconditionally guaranty the payment, performance and observance of all of the agreements,

---

[3] Although the Mortgage is not attached to any of the pleadings, the court may consider it because it is referenced in the pleadings and is deemed incorporated in the pleadings. See Abiona, 237 F. Supp.2d at 265.

representations, warranties, covenants and conditions of [Titan]
contained in a [Security Agreement] and [Note], . . . which
evidences said note and any extension or renewals thereof, any
future advances or adjustments thereunder or any substitutions
therefor . . ."  Guaranty at 1 (annexed as Exh. B to 3/28/05 Pu
Decl.)  The Guaranty further provided that the Mortgage secured
the "payment, performance and observance of all the convenants
and conditions contained in the Promissory Note, . . . the
Security Agreement, the License Agreement and . . . the payment
of all of [Titan's] other present and future debts."  <u>Id.</u>

Under New York law, "the fundamental, neutral precept of
contract interpretation is that agreements are construed in
accord with the parties' intent."  <u>Eternity Global Master Fund
Ltd. v. Morgan Guar. Trust Co. of N.Y.</u>, 375 F.3d 168, 177 (2d
Cir. 2004) (quoting <u>Greenfield v. Philles Records, Inc.</u>, 98
N.Y.2d 562, 569 (2002)).  The intent of the parties can be found
in the language used in the agreement; if an agreement is
"complete, clear and unambiguous on its face, it must be enforced
according to the plain meaning of its terms."  <u>Id.</u>  If the
contract is ambiguous, extrinsic evidence may be considered "to
ascertain the correct and intended meanings of a term" or terms.
<u>Id.</u> at 178.  "Ambiguity exists where a contract term could
suggest more than one meaning when viewed objectively by a
reasonably intelligent person who has examined the context of the
entire integrated agreement and who is cognizant of the customs,
practices, usages, and terminology as generally understood in the

particular trade and business." World Trade Ctr. Props., L.L.C.
v. Hartford Fire Ins. Co., 345 F.3d 154, 184 (2d Cir. 2003). "If
a contract is ambiguous as applied to a particular set of facts,
a court has insufficient data to dismiss" on the pleadings. See
Eternity Global, 375 F.3d at 178.

A mortgage and guaranty executed on the same day and as part
of the same transaction will be read together. See Oneida Nat'l
Bank v. Gulla, 505 N.Y.S.2d 22, 23 (4th Dep't 1986); 77 N.Y.
Jur.2d Mortgages § 90 (2005); see also Yoi-Lee Realty Corp. v.
177th St. Realty Assocs., 626 N.Y.S.2d 61, 64 (1st Dep't 1995)
(mortgage note is inseparable from mortgage to which note
expressly refers). A mortgage "must clearly refer to the
obligation which the realty is to secure." North-East
Hospitality L.L.C. v. Batavia Innkeepers, Inc., 692 N.Y.S.2d 261,
261 (4th Dep't 1999). Because the Mortgage clearly states that
it secured the "Guaranty," id. at 1, first ¶, the Mortgage could
be read as securing all the obligations referred to in the
Guaranty. However, the Mortgage also clearly refers to the sum
of $100,000 and refers to a "note" several times. See, e.g.,
Mortgage at 1, 4, 5, 7. These different provisions "could
suggest more than one meaning" as to the terms of the Mortgage
and Guaranty. World Trade Ctr., 345 F.3d at 184. Construing the
Mortgage together with the Guaranty, there is an ambiguity as to
whether the Mortgage was intended to be limited to securing the
Note. As a result, the Court must look to extrinsic evidence to
ascertain the parties' intent. I thus recommend that defendants'

motion for judgment on the pleadings be denied.  See <u>Eternity Global</u>, 375 F.3d at 178.

<u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that the Court deny plaintiff's motion to stay this action, plaintiff's motion to dismiss the sixth counterclaim, plaintiff's motion for a more definite statement, defendants' motion to stay the arbitration and defendants' motion for judgment on the pleadings. I further recommend that the Court grant plaintiff's motion to dismiss the second, eighth and part of the tenth counterclaims.

A copy of this report and recommendation is being filed electronically on this date.  Any objections to this report and recommendation must be filed with the Clerk of this Court and the Chambers of the Honorable Edward R. Korman, with a copy to the undersigned, by January 12, 2006.  Failure to file timely objections may waive the right to appeal the District Court's Order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED**.

Dated:     Brooklyn, New York
           December 28, 2005

                      _____/s/_____
                      MARILYN D. GO
                      UNITED STATES MAGISTRATE JUDGE