UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------x      Action No. 1
                                               CV 04-5207
MEDICINE SHOPPE INTERNATIONAL,                 (Korman, Go)
INC.,

                    Plaintiff,

        -against-

APOSTOLOS MITSOPOULOS and
EFROSINI MITSOPOULOS,

                    Defendants.

---------------------------------------x
                                               Action No. 2
TITAN PHARMACEUTICALS AND NUTRITION,           CV-06-1550
INC. and GEORGE MITSOPOULOS,

                    Plaintiffs,

        -against-

MEDICINE SHOPPE INTERNATIONAL,
INC.,

                    Defendant.

---------------------------------------x


        TITAN'S AND GEORGE MITSOPOULOS'S REPLY BRIEF
        IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION


        Titan Pharmaceuticals and Nutrition, Inc. and George

Mitsopoulos (collectively, "Movants") submit this reply brief in

further support of their support for a preliminary injunction

staying arbitration.  As noted below, the Arbitrator declined to

grant a stay required by the AAA's own rules.  And, unless

Movants' motion is granted, they will lose the right to prosecute a class-wide arbitration-- a loss which money damages can't remedy.

POINT I

NO PRIOR APPLICATION HAS BEEN MADE
ON THE GROUNDS UNDERLYING THE INSTANT MOTION

MSI notes Movants' prior attempts to stay the St. Louis arbitration. 4/28/06 MSI Brf. 4-5. As noted below, 1) these repeated attempts were prompted by clear evidence of partiality and 2) in any event, no application has been made on the grounds advanced herein.

The Evidence of Partiality

The repeated attempts to stay arbitration were motivated by the obvious partiality on the part of the arbitrator Jay Kanzler (the "Arbitrator"). The Arbitrator is a young lawyer with a start-up two-man law firm in St. Louis, devoting a significant amount of time to alternative dispute resolution. 10/14/05 Kanzler Resume, Reply A. 4.[1] He listed his areas of concentration as being:

> "[1] commercial litigation, [2] health care compliance and [3] franchise matters." Fall 2003 Alumni Bulletin, Reply A. 3 (brackets supplied).

And, significantly, MSI and its parent Cardinal Health is the only business in St. Louis that throws off work in those three

---

[1] In this brief, "A." refers to the 4/24/06 Appendix, and "Reply A." refers to the 5/4/06 Appendix.

areas.  11/21/05 Pu to Bell, Reply A. 20.  Furthermore, all of MSI's hundreds of franchise agreements require arbitration in St. Louis.  As a consequence, MSI has recurring need for arbitrators in the St. Louis area.

Under the circumstances, Movants were rightly concerned that the Arbitrator regarded MSI as a source of lucrative work.  In particular, Movants were concerned that the Arbitrator regarded MSI as a potential source of work.  Movants asked the American Arbitration Association to ask about the Arbitrator's solicitations of MSI.  10/19/05 Pu to Bell 3, Reply A. 8.  But the AAA declined to make such inquiry.  11/4/05 Bell to Pu, Reply A. 19.

The Arbitrator's subsequent decisions only enhanced Movants' concerns.  For example, the Arbitrator ignored the clear directive of the AAA's rules to stay the hearing after the Construction Award.  See discussion at p. 22, infra.  Similarly the Arbitrator deemed ¶ 14(K) of the franchise agreement not to be a limitation of claims, even though it is entitled "Limitation of Claims", it uses the wording of the AAA rules for commencing an arbitration proceeding, and MSI admitted it was a limitation of actions.  Compare 3/31/06 Brf. 3-5. Reply A. 23-25 with 4/6/06 Decision 3-4, A. 52-53.  Thus, Movants had ample grounds for seeking to stay the arbitration.

4

<u>No Prior Application has been Made on the Instant Grounds</u>

In any event, no prior application has been made on the instant grounds.  The instant motion seeks enforcement of the AAA's Supplemental Rule 3.  And it is not disputed that no prior application has been made on such ground.

POINT II

<u>VENUE IS PROPERLY LAID IN THE EDNY</u>

MSI also contends that venue is not properly laid in the EDNY by reason of a forum selection clause.  As shown below, the Court is not bound by the clause, and considerations of judicial economy militate in favor of the Court deciding the instant motion.

A Court has Inherent Power to Consider Motions Even Where Venue is not Properly Laid

As a preliminary matter, a court has inherent power to consider motions even where venue is improperly laid.  Otherwise, a court wouldn't be able to consider a motion to dismiss for improper venue.  As shown below, there are good reasons here for deciding Movants' motion, regardless of whether venue has been properly laid.

The Question of Venue has been Superceded by the Consolidation

In any event, the question of venue has been superceded by the consolidation of Action No. 2 with Action No. 1.  After a consolidation, the constituent actions are merged, leaving but one action.  <u>Roden</u> v. <u>Empire Printing Co</u>., 135 F.Supp. 665, 667 (D. Alaska 1955).

6

Here, it is not disputed that venue for Action No. 1 was correctly laid-- especially since it was MSI itself that brought Action No. 1 in the EDNY. Thus, when Action No. 2 was consolidated with Action No. 1, Action No. 2 ceased to exist as a separate action. And, by the same token, venue became properly laid for Action No. 2, regardless of any choice of forum provision.

Action No. 2 does not Fall Within the Choice of Forum Provision

In any event, Action No. 2 does not fall within the choice of forum provision That clause selects Missouri federal court for:

"any action for a preliminary injunction, to compel arbitration or enforce an arbitrator's award"

4/28/06 MSI Brf. 6.

But, Action No. 2 doesn't fall under any of those clauses. In particular, Action No. 2 isn't an action for a preliminary injunction, but rather a permanent injunction; only the instant motion seeks a preliminary injunction. Nor does Action No. 2 seek to compel arbitration. Nor does Action No. 2 seek to enforce an arbitrator's award, but rather the opposite-- to vacate the award. Thus, the choice of forum provision doesn't apply to Action No. 2.

Even if Action No. 2 Falls Within the Choice of Forum Provision, Considerations of Judicial Economy Militate Against Enforcement of the Clause

Even if Action No. 2 falls within the choice of forum provision, considerations of judicial economy militate against enforcement of the clause.

1. The Existence of a Choice of Forum Provision is not Dispositive of Whether the Action Should be Transferred

The existence of a forum selection clause is not dispositive of whether the action should be transferred. Here, venue for Action No. 2 was properly laid in the EDNY under the 28 U.S.C. § 1391(a)(2), which permits an action to be brought where a substantial part of the events giving rise to the claim occurred. In particular, the arbitration clause under review was signed in the EDNY.

When venue is proper under § 1391, the ultimate destination of the action is governed by 28 U.S.C. § 1404(a). Licensed Practical Nurses, Technician and Health Care Workers of New York, Inc. v. Ulysses Cruises, Inc., 131 F.Supp.2d 393, 404 (S.D.N.Y. 2000) (discussing § 1404(a), Rule 12(b)(6), Rule 12(b)(3) and § 1406); Great White Fleet (US) Ltd. v. DSCV Transport, Inc., 2000 WL 1480404 p. 3 (S.D.N.Y. 2000); Maltz v. Union Carbide Chemicals & Plastics Co., 992 F.Supp. 286, 295-96 (S.D.N.Y. 1998); Haskell

8

v. <u>FPR Registry, Inc</u>.,  862 F.Supp. 909, 913 (E.D.N.Y. 1994).

<u>See also</u>, <u>Crescent International, Inc.</u> v. <u>Avatar Communities, Inc</u>., 857 F.2d 943, 944 fn. 1 (3rd Cir. 1988)(§ 1406 not applicable to enforcement of forum selection clause where venue otherwise proper).  <u>See</u> <u>Stewart Organization, Inc</u>. v. <u>Ricoh Corp</u>., 487 U.S. 22, 28, 29 108 S.Ct. 2239, 2243 (1988)("federal law, specifically 28 U.S.C. § 1404(a), governs the parties' venue dispute")("Rather, the first question for consideration should have been whether § 1404(a) itself controls respondent's request to give effect to the parties' contractual choice of venue and transfer this case to a Manhattan court.   For the reasons that follow, we hold that it does.")("We hold that federal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause").

Section 1404(a) provides that:

"For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Under, § 1404(a), the existence of a forum selection clause is not dispositive of whether the action should be transferred.  <u>Red Bull Associates</u> v. <u>Best Western International, Inc</u>., 862 F.2d 963, 967 (2nd Cir. 1988)(affirming denial of motion to transfer

to selected forum).  Rather, the court must engage in an "individualized, case-by-case consideration of convenience and fairness."  <u>Stewart Organization, Inc.</u> v. <u>Ricoh Corp</u>., <u>supra</u>, 487 U.S. at 23, 29 108 S.Ct. at 2239.  That consideration must take into account 1) the convenience of the selected forum, 2) the fairness of transfer and 3) the parties' relative bargaining power.  <u>Id</u>., 487 U.S. at 30, 29 108 S.Ct. at 2245.

    2.   Considerations of Judicial Economy Militate Against
        <u>Enforcement of the Venue Selection Clause</u>

Here, considerations of judicial economy militate against enforcement of the venue selection clause.  In deciding venue motions, courts strive to bring related claims before the same court.  <u>See</u> <u>KPMG Consulting, Inc</u>. v. <u>LSQ II, LLC</u>., 2002 WL 1543907 p. 6 (S.D.N.Y. 2002)(SAS)(noting "strong policy" in favor of bringing related claims before same tribunal).  <u>See also</u>, <u>Citicorp Leasing, Inc</u>. v. <u>United American Funding, Inc</u>., 2004 WL 102761 p. 6  (S.D.N.Y. 2004)("judicial economy ... may be determinative").  <u>See also</u>, <u>Mylan Pharmaceuticals Inc</u>. v. <u>American Safety Razor Co</u>., 265 F.Supp.2d 635, 638 (W.D. W.Va. 2002)(decrying "gross waste" of requiring plaintiff to refile in a new court); <u>Taylor Investment Corp</u>. v. <u>Weil</u>, 169 F.Supp.2d

1046, 1061 (D. MN 2001)(decrying "waste" of litigation in more than one forum).

Here, most-- if not all-- of Action No. 2 may proceed in the EDNY.  See discussion at p. 7, <u>supra</u>.  And, needless to say, it would be wasteful for one a fragment of Action No. 2 to be litigated in St. Louis whilst the rest remained in the EDNY. Furthermore, this Court has devoted considerable time and efforts to Action No. 1:

- The court has issued two substantial decisions, deciding some seven motions, and establishing significant law of the case;

- The court has presided over two conference;

- The parties have exchanged tens of thousands of pages of documents;

- The parties have responded to roughly six sets of interrogatories;

- Two lawyers and a witness came to New York from St. Louis for MSI's deposition.

Indeed, Action No. 1 is ready for dispositive motions.

Under the circumstances, it would be terribly wasteful to require Movants to commence an action in St. Louis just to litigate their entitlement to a stay under the AAA's Supplemental Rule 3.  For the foregoing reason, the EDNY should decide Movant's motion and the underlying claim for a stay of arbitration.

11

MSI's Choice of Forum Provision is Unenforceable Because of the
Showing of Fraudulent Inducement

In any event, MSI's choice of forum provision is unenforceable because of the showing of fraudulent inducement. The enforceability of a forum selection clause is a contract question governed by state law.  General Engineering Corp. v. Martin Marietta Alumina, Inc., 783 F.2d 352, 356 (3d Cir.1986); Snider v. Lone Star Art Trading Co., 672 F.Supp. 977, 981 (E.D. MI 1987).  There has been widespread reliance on M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907 (1972), and its deference to such clauses.  But as the Supreme Court has noted, Bremen was an admiralty case, and is not applicable to diversity cases.  Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 2243 (1988).

Turning to state law, the parties selected the law of Missouri law to govern their agreement.  12/12/96 License Agreement.  12/12/96 License Agreement ¶ 14(H), A. 40.  Under Missouri law, fraud in the negotiation of the parties' agreements will void a forum selection clause; that is, it is not necessary to show fraud in the negotiation of the forum selection clause itself.  See, Whelan Security Co. v. Allen, 26 S.W.3d 592, 596 (Mo. Court of Appeals 2000)("To be enforceable, the clause must have been obtained through freely negotiated agreements absent

12

fraud")(emphasis supplied); <u>Chase Third Century Leasing Co</u>. v. <u>Williams</u>, 782 S.W.2d 408, 411 (Mo. Ct. App.  1989)("the clause must have been obtained through freely negotiated agreements <u>absent fraud</u>")(emphasis supplied). <u>See also</u>,  <u>Farmland Indus., Inc</u>. v. <u>Frazier-Parrott Commodities, Inc</u>., 806 F.2d 848, 851 (8th Cir. 1987)(fraudulent inducement of agreement generally suffices).

   With respect to Movants' claim of fraud, plaintiffs need establish only a prima facie case of fraud, and the facts must be viewed in the light most favorable to them.  <u>See</u> <u>New Moon Shipping Co</u>. v. <u>ManB & WDiesel AG</u>, 121 F.3d 24, 29 (2nd Cir. 1997).  Here, the franchise agreement containing the choice of forum provision was included by false earnings claims.  The fraud is reflected in documentary evidence, and therefore, plaintiffs have established their prima facie case.  4/24/06 Movants' Brf. 3.  Accordingly, MSI's choice of forum provision is not enforceable.

13

POINT III

<u>MOVANTS ARE ENTITLED TO A PRELIMINARY INJUNCTION</u>

Finally, Movants are entitled to a preliminary injunction. As shown below, the Arbitrator declined to grant a stay required by the AAA's own rules.  And, unless Movants' motion is granted, they will lose the right to prosecute a class-wide arbitration-- a loss that money damages can't remedy.

<u>Movants need not Make the Usual Showings because MSI Consented to the Entry of a Stay</u>

In their moving papers, Movants showed that MSI agreed to be bound by the AAA's rules, and that, under those rules, Movants are entitled to a stay to permit review of the Arbitrator's Construction Award.  By reason of such consent, Movants were not obligated to make the usual showings required for a preliminary injunction.

MSI's response doesn't address that contention-- suggesting that no convincing response could be made.  Accordingly, Movants' motion must be granted.

<u>In any Event, Movants Made the Requisite Showings</u>

In any event, Movant made the requisite showings.

14

1.   <u>Movants Showed Irreparable Harm</u>

First, Movants showed irreparable harm.  That is true whether the harm is the need to participate in arbitration hearings, or the loss of the right to represent a class.

a.   <u>The Need to Participate in Arbitration Proceedings Constitutes Irreparable Harm</u>

The need to participate in arbitration proceedings constitutes irreparable harm.  MSI contends otherwise, relying on <u>Emery Air Freight Corp</u>. v. <u>Local Union 295</u>, 786 F.2d 93, 100 (2nd Cir. 1986)("Emery").[2]  MSI Brf. 9.  To this, Movants make a three-part response.

First, the irreparable harm doesn't lie in just in the incurring of attorneys fees.  It lies more importantly in the abstract injury of being subjected to the unwarranted exercise of power.  In general, being subjected to an unwarranted exercise of power constitutes irreparable harm.  <u>See, e.g</u>., <u>Will</u> v. <u>United States</u>, 389 U.S. 90, 95 (1967)(usurpation of power justifies use of extraordinary remedy of mandamus).  And in particular, the

_____

[2]  In this connection, MSI asserts that Judge Scheindlin's 3/13/06 Decision found that Movants had failed to show irreparable harm.  But in fact Judge Scheindlin's decision held that the fraud alleged by Movants did not bear a "substantial relationship" to the arbitration clause.  3/13/06 Decision 15, 4/28/06 Levy Aff. Exhibit L.  There was no decision by Judge Scheindlin as to whether Movants had showed irreparable harm.

harm warranting a stay of arbitration is being subjected to the arbitrator's power.  E.g., PaineWebber Inc. v. Hartmann, 921 F.2d 507, 515 (3rd Cir. 1990)(no error in determination that "PaineWebber would suffer irreparable harm if it were forced to submit to the arbitrator's jurisdiction").

Second, Emery isn't controlling because the statement relied on by MSI was dicta.  In particular, the statement quoted by MSI comes after the court had determined that the parties' dispute was arbitrable, and that no stay of arbitration was warranted.  See Emery Air Freight Corp. v. Local Union 295, supra, 786 F.2d at 97-98 (dispute arbitrable because arbitration agreement survived expiration of collective bargaining agreement).  Indeed, the Eighth Circuit declined to follow Emery, holding that the statement quoted by MSI was dicta.  McLaughlin Gormley King Co. v. Terminix International Co., 105 F.3d 1192, 1194 (8th Cir. 1997)(affirming grant of preliminary injunction staying arbitration).  Thus, Emery is not controlling on the question of irreparable harm.

Reflecting that, in at least three cases following Emery, the Second Circuit affirmed stays of arbitration.  E.g., Satcom International Group PLC v. Orbcomm International Partners, L.P., 205 F.3d 1324 (2nd Cir. 1999), aff'ing per curiam, 49 F.Supp. 331, 342 (S.D.N.Y. 1999); Collins & Aikman Products Co. v.

16

<u>Building Systems, Inc.</u>, 58 F.2d 16, 23 (2nd Cir. 1995; <u>Zwitserse</u> <u>Maatschappij Van Levensverzekering In Lijfrente, N.V.</u> v. <u>ABN</u> <u>International Capital Markes Corp</u>., 996 F.2d 1478, 1480 (2nd Cir. 1993).

Similarly, in the aftermath of <u>Emery</u>, this Court has repeatedly found irreparable harm in having to defend arbitration proceedings.  <u>E.g.</u>, <u>PaineWebber Inc</u>. v. <u>Hartmann</u>, 921 F.2d 507, 515 (3rd Cir. 1990); <u>Tellium, Inc</u>. v. <u>Corning Inc</u>., 2004 WL 1403297 p. 4 (SDNY 2004)("irreparable injury ... is per se established"); <u>Zimring</u> v. <u>Coinmach Corp</u>., 2000 WL 1855115 p. 4 (SDNY 2000)(irreparable injury presumed); <u>GTFM, LLC</u> v. <u>TKN Sales, Inc</u>.,  2000 WL 364871 p. 2 (SDNY 2000)("a party will suffer irreparable harm if compelled to arbitrate in the absence of any agreement to do so"); <u>Chicago School Reform Board of Trustees</u> v. <u>Diversified Pharmaceutical Services, Inc</u>., 40 F.Supp. 987, 996 (N.D. Ill. 1999)("several courts have held that forcing a party to arbitrate a dispute that it did not agree to arbitrate constitutes <u>per se</u> irreparable harm."); <u>Mount Ararat Cemetery</u> v. <u>Cemetery Workers and Greens Attendants Union, Local 365, S.E.I.U., A.F.L.-C.I.O.</u>, 975 F.Supp. 445, 447 (E.D.N.Y. 1997)("as to the irreparable harm element of the preliminary injunction inquiry, Ararat may be presumed to suffer irreparable harm if forced to arbitrate"); <u>International Trust Co</u>. v. <u>Fahnestock &</u>

Co., 1995 WL 606275 p. 3 (SDNY 1995)("A party that has not agreed to arbitrate a dispute will suffer irreparable harm if it forced to submit to arbitration"); Spear, Leeds & Kellogg v. Central Life Assurance Co., 879 F.Supp. 403, 404 (S.D.N.Y. 1995)("A party so situated will suffer per se irreparable harm if a court compels the party to submit to arbitration when it has not agreed to do so."), rev'd on other gr., 85 F.3d 22, 25 (2nd Cir. 1996)(lower court's finding of irreparable harm not appealed); Dain Bosworth, Inc. v. Fedora, 1993 WL 33642 p. 2 (S.D.N.Y. Feb. 3, 1993)(having to defend arbitration proceeding "would irreparable harm plaintiff"). Accordingly, the need to participate in arbitration hearings does constitute irreparable harm.

> b.   The Loss of the Right to Represent a Class
>      Constitutes Irreparable Harm

Second, MSI contends that Movants are not harmed-- irreparably or otherwise--- by the loss of the right to represent a class. MSI Brf. 9-10. MSI first contends that the Arbitrator determined that Movants had agreed not to bring a claim on behalf of a class. As a consequence, according to MSI, the loss of the right can not be deemed irreparable harm. Id.

But MSI's contention is obviously circular. If a decision

by the inferior tribunal could prevent a showing of irreparable harm, it would never be possible to seek a stay pending review of that decision.  The decision below would always thwart the application for the stay.

But needless to say, that's not the case.  In assessing the existence or not of irreparable harm, the court must assume arguendo that the decision below was incorrect and ask whether the resulting harm is irreparable.  And significantly, in a similar context, courts have stayed proceedings in the inferior tribunal.  In particular, where the lower court has denied certification of a class, the practice has been to stay proceedings whilst the denial is reviewed.  In Re: Lorazepam & Clorazepate Antitrust Litigation, 208 F.R.D. 1, 6 (D.C.D.C. 2002)(staying lower court proceedings).  See also, National Asbestos Workers Medican Fund, 2000 WL 1424931 p. 1 (E.D.N.Y. 2000)(staying running of statute of limitations).  Accordingly, Movants have showed irreparable harm.

MSI also contends that Movants weren't harmed by the Arbitrators' refusal to stay the proceedings, because the 5/15/06 hearing was more than thirty days from the issuance of the Construction Award.  MSI Brf. at 11-12.  Preliminarily, MSI's contention doesn't appply to the 4/19/06 denial of the stay, which was made less than thirty days from the hearing.  Thus, at

19

the time of the 4/19/06 denial, a thirty-day stay would have prevented the hearing, and Movants were harmed by the 4/19/06 denial.

But more cogently, MSI's argument confuses prejudice with irreparable harm:

> - questions going to whether a litigant suffered prejudice are determined by looking <u>backwards</u> in time and asking whether the litigant was harmed;

> - questions going to whether a litigant will suffer irreparable harm are determined by looking <u>forward</u> in time, and asks whether the absence of intervention will harm the litigant in a fashion that money damages can't remedy.

Here, as noted above, looking <u>forward</u> in time raises the prospect of Movants losing their right to represent a class, a loss that money damages can't remedy.

### 2. <u>Movants have Showed Likelihood of Success on the Merits</u>

In addition, Movants have showed likelihood of success on the merits, or at least serious questions going to the merits and a balance of hardships tipping in Movants' favor.

### a. <u>Applicable Standard</u>

The vacatur of arbitrators' award is governed by Section 10(a) of the Federal Arbitration Act, which provides:

"(a) In any of the following cases the United States

20

court in and for the district wherein the award was made[3] may make an order vacating the award upon the application of any party to the arbitration--

>    (1) where the award was procured by corruption, fraud, or undue means;

>    (2) where there was evident partiality or corruption in the arbitrators, or either of them;

>    (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

>    (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

15 U.S.C. § 10(a) (emphasis supplied). As shown below, there is a likelihood of Movants succeeding in vacating the Arbitrator's refusal to grant a stay on one or more of the aforementioned grounds.

>    b.    The Arbitrator was Guilty of Misconduct in Refusing to Postpone the Hearing

---

[3] The provision for laying venue "in and for where the district wherein the award was made" is permissive, not mandatory. Photopaint Technologies, LLC v. Smartlens Corporation, 335 F.3d 152, 157 fn. 4 (2nd Cir 2003); Smiga v. Dean Witter Reynolds, Inc., 766 F.2d 698, 706 (2nd Cir. 1985). Thus, Action No. 2 was properly brought in the EDNY.

First, the Arbitrator was "guilty of misconduct in refusing to postpone the hearing" within the meaning of § 10(a)(3).  MSI contends that Movants must show abuse of discretion.  MSI Brf. 14-15.  But MSI's cases involve situations where the granting of a stay lay within the arbitrator's discretion.  E.g., <u>Agarwal</u> v. <u>Agarwal</u>, 755 F. Supp. 558, 590 (E.D.N.Y. 1991).

But here, the Rule 3 stay is mandatory rather than discretionary:

> "The arbitrator shall <u>stay</u> all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or vacate the Clause Construction Award."

Rule 3, A. 79 (emphasis supplied).

Thus, it didn't matter whether the Arbitrator had a reason for not complying with the Rule 3 mandate.  He was required to grant the stay, notwithstanding any countervailing considerations.  And, by the same token, the failure to comply with Rule 3 necessarily constitutes misconduct in refusing to postpone the hearing.  Thus, there is a likelihood of vacatur of the refusal to grant the Rule 3 stay.

MSI suggests that issuing a thirty-day stay would not have avoided the hearing, because the 5/15/06 hearing was more than thirty days from the 4/3/06 issuance of the Construction Award. MSI Brf. 13-14..  This may have been true of the 4/3/06 refusal

to grant the stay.  But the 4/19/06 refusal was <u>less</u> than thirty days from the hearing.  Thus, granting the stay then would have required postponement of the hearing.

ii. <u>The Issue Going to the Meaning of Rule 3</u>

But more cogently, MSI's contention is based on a misreading of Rule 3.  Rule 3 grants a thirty-day stay to permit parties to seek a review of a construction award.  The intent must have been that, if review is sought within the thirty-day period, the stay extends for as long as required to complete the review. Otherwise the thirty-day stay is of no use.

This interpretation finds support in the AAA's 2/18/05 policy statement.  There, the AAA makes plain its policy that, where the arbitration agreement bars class-wide arbitrations, no hearing will be held until a court has opined on the enforceability of the bar:

> "It has been the practice of the American Arbitration Association since its Supplementary Rules for Class Arbitration were first enacted to require a party seeking to bring a class arbitration under an agreement that on its face prohibits class actions <u>to first seek court guidance</u> as to whether a class arbitration may be brought under such an agreement.  The Association's practice has been neither to commence administration of a case nor to refer such a matter to an arbitrator <u>until a court decides that it is appropriate to do so</u>.
>
> ... Courts in different states and different federal circuits have reached differing conclusions

23

> concerning the preclusion of class actions by agreement and 'gateway' issues generally.  However, the courts that have confronted the question have generally concluded that the decision as to whether an agreement that prohibits class actions is enforceable <u>is one for the courts</u> to make, not the arbitrator."

2/18/05 Commentary to the American Arbitrator Association's Policy on Class Arbitrations, A. 84.

Thus, the intent behind Rule 3 must have been that the hearing won't proceed until a court has determined the enforceability of a class-wide bar.  Thus, a proper application of Rule 3 would have been to stay the hearing during the pendency of court review, regardless of whether the hearing was more or less than thirty days from the issuance of the Construction Award.  At a minimum, there is a serious question going to the meaning of Rule 3.

c.    The Arbitrator Exceeded his Powers in Refusing to Grant the Rule 3 Stay

Furthermore, the Arbitrator exceeded his powers within the meaning of § 10(a)(4) in refusing to grant the Rule 3 stay.  As noted above, the Rule 3 was mandatory, not discretionary.  Thus, in refusing to comply with Rule 3, the Arbitrator plainly exceeded his powers.  Thus, there is a likelihood of vacatur of the Arbitrator's refusal to issue the Rule 3 stay.

24

>           d.    The Arbitrator Engaged in a Manifest Disregard of
>                 the Law in Refusing to Grant the Rule 3 Stay

Similarly, in refusing to grant the Rule 3 stay, the Arbitrator engaged in a manifest disregard of the law within the meaning of applicable caselaw.  MSI contends that the caselaw requires that the Arbitrator understood the law, and simply disregarded it.  MSI Brf. 13.

But there is evidence of such disregard in the 4/3/06 Construction Award.  There, the Arbitrator deems the stay unnecessary as of 4/3/06; significantly, however, he permits the parties to reapply for a stay if "circumstances so require." 4/3/06 Construction Award 4, A. 53.  But when circumstances did so require, and Movants' renewed their application for a stay, the Arbitrator held that Rule 3 did not apply to the proceeding before him.  4/19/06 Dec. A. 77.  Thus, the Arbitrator plainly understood that Rule 3 guarantied a review of a Construction Award before proceeding to hearing, but disregarded Rule 3 using a pretext.

>           e.    The Refusal to Grant the Rule 3 Stay was the
>                 Result of Evident Partiality

Furthermore, the refusal to grant the Rule 3 stay was the result of evident partiality within the meaning of §10(a)(2). The Arbitrator is a young lawyer with a two-man startup firm in

St. Louis.  MSI is a principal consumer of legal services in the St. Louis area.  Moreover, MSI and its parent are the only business in St. Louis that throws off work in all three of the Arbitrator's areas of concentration.  Statement of Facts at p. 3, _supra_.  Furthermore, because all of MSI's hundreds of franchise agreements require arbitration in St. Louis, MSI has recurring demand for arbitrators in St. Louis.  Under the circumstances, there is a likelihood of the Arbitrator being reluctant to alienate a source of lucrative work.

And the other decisions of the Arbitrator reflect partiality.  For example, the Arbitrator held that ¶ 14(K) of the franchise agreement was not a limitation of actions, even though is entitled "Limitation of Claims", it uses the wording of the AAA rules for commencing an arbitration proceeding, and MSI _admitted_ it was a limitation of actions.  Statement of Facts at p. 4, _supra_.

And in connection with the instant dispute, the Arbitrator declined to grant a stay despite the clear requirement of Rule 3.  Furthermore, the reason given for denying the stay was plainly a pretext for some other motivation.  In particular, the Arbitrator purported that the Supplementary Rules, of which Rule 3 is a part, don't apply where the arbitration agreement barred class-wide arbitration.  4/19/06 Decision 1-2, A. 76-77.  But the very

purpose of Rule 3 is to give an opportunity for court review where the arbitration agreement purports to bar class-wide arbitrations:

> "It has been the practice of the American Arbitration Association since its Supplementary Rules for Class Arbitrations were first enacted to require a party seeking to bring a class arbitration <u>under an agreement that on its face prohibits class actions</u> to first seek court guidance as to whether a class arbitration may be brought under such an agreement."  2/18/05 Policy Statement, A. 84.

Thus, the reason given for denying the stay was plainly a pretext for a motivation that couldn't be acknowledged.  Under the circumstances, there is a likelihood of showing that the refusal to comply with Rule 3 was the result of evident partiality.

3. There are Serious Questions Going to the Merits and the Balance of Hardships Tips Decidedly in Movants' Favor

In any event, there are serious questions going to the merits and the balance of hardships tips decidedly in Movants' favor.  As noted above, there are serious questions going to the meaning of Rule 3-- whether it requires only a thirty-day stay or a sufficient stay to permit review of a Construction Award.  See discussion at p. 27, <u>supra</u>.

Furthermore, the balance of hardships tips decidedly in Movants' favor.  Movants and their lawyer are in New York.  MSI and its lawyers are in St. Louis, the situs of the arbitration.

A stay of the hearing would have no effect on MSI, whereas requiring the 5/15/06 hearing to go forward requires significant time and expense on the part of Movants. Thus, the hardships tip decidedly in Movants' favor and their motion must be granted.

<u>Conclusion</u>

For the foregoing reasons, Movants' motion must be granted.

Dated: New York, NY
      May 4, 2006

           Richard Pu, P.C.

By: _____
    Richard Pu (RP 2321)

120 E. 90th St., 10C
New York, NY 10018
(212) 427-3665 (o)
(212) 427-6057 (fax)

28